**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LONDON DIVISION**

IN RE

DERRICK WAYNE LOVELESS                      CASE NO. 25-61016

DEBTOR                                                CHAPTER 13

**MEMORANDUM OPINION AND ORDER**
**DENYING OBJECTION TO PLAN CONFIRMATION**

Debtor Derrick Wayne Loveless filed a chapter 13 plan. Creditor Andover Auto Sales, Inc.

d/b/a Broadway Auto Mall has a claim, secured by a vehicle, treated in the plan. Creditor objects to

plan confirmation based on the treatment of its claim and, more specifically, the proposed interest rate.

Creditor, Debtor, and Beverly M. Burden, Chapter 13 Trustee ("Trustee"), stipulated to pertinent facts

[ECF No. 34], Creditor and Trustee briefed the interest rate issue, and no party sought an evidentiary

hearing. Oral argument is unnecessary. For the following reasons, Creditor's objection is overruled.

**BACKGROUND**

On November 23, 2024, Debtor bought a 2013 Ford F150 (the "Vehicle") from Creditor

pursuant to a Retail Installment Contract and Security Agreement (the "Contract"). The purchase price

was $21,969.54, payable at 14.9% interest per annum, via 45 bi-weekly payments of $550 each and a

final payment of $270.47. Debtor granted Creditor a security interest in the Vehicle and the lien was

properly perfected on December 19, 2024.

On September 18, 2025, Debtor filed a chapter 13 petition and a 60-month chapter 13 plan.

[ECF No. 2 (the "Plan")]. The Plan reflects that Creditor's claim was incurred within 910 days of the

petition date and is secured by a purchase money security interest in a motor vehicle acquired for

Debtor's personal use. Creditor's claim thus is not subject to valuation under § 506 in accordance with the "the hanging paragraph" following § 1325(a)(9).[1] In other words, Creditor has a "910 claim."

The Plan provides Creditor will be paid the principal amount of its claim (as set forth in its proof of claim) over the Plan's term with interest at 9.25% in accordance with *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004). Creditor objected to confirmation of the Plan on November 5, 2025, raising, *inter alia*, the proposed interest rate. [ECF No. 17 (the "Objection").] All other issues raised in the Objection have been resolved as moot or are deemed withdrawn.

## JURISDICTION AND VENUE

The Court has jurisdiction over this contested matter. 28 U.S.C. §1334. This is a core proceeding. 28 U.S.C. §157(b)(2)(A), (L), and (O). Venue is proper. 28 U.S.C. §1409.

## ANALYSIS

I.      **A Debtor May Cram Down the Interest Rate on a 910 Claim in a Chapter 13 Plan.**

The narrow issue presented is one which several courts already have resolved: can a debtor's chapter 13 plan alter the contract interest rate on a 910 claim? Aside from some cases issued shortly after Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") in 2005,[2] the seemingly unanimous answer is yes.[3] But Creditor disagrees with this conclusion, particularly as to the application of *Till* to a chapter 13 plan's treatment of 910 claims.

A.      **The Bankruptcy Code.**

Several Code provisions apply to the issue presented. To begin with, § 1322(b) states a chapter 13 debtor may submit a plan that modifies the rights of secured and unsecured creditors. Next, a

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] Pub. L. No. 109-8, § 306(b), 119 Stat. 23, 80.

[3] Shortly after BAPCPA's enactment, some courts read the amendments to mean 910 claims were not secured claims and should not be paid with interest in a chapter 13 plan. *See, e.g., In re Carver*, 338 B.R. 521, 525-27 (Bankr. S.D. Ga. 2006); *In re Wampler*, 345 B.R. 730 (Bankr. D. Kan. 2006). The cases largely have been overruled or otherwise are disfavored.

bankruptcy court will confirm a chapter 13 plan that satisfies the mandatory requirements in § 1325(a).

*See Shaw v. Aurgroup Fin. Credit Union*, 552 F.3d 447, 462 (6th Cir. 2009).

Section 1325(a)(5) addresses the treatment of secured claims provided for in a plan. It states:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

   (5) with respect to each allowed secured claim provided for by the plan—

      (A) the holder of such claim has accepted the plan;

      (B)(i) the plan provides that—

         (I) the holder of such claim retain the lien securing such claim until the earlier of—

            (aa) the payment of the underlying debt determined under nonbankruptcy law; or

            (bb) discharge under section 1328; and

         (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

      (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

      (iii) if—

         (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

         (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

      (C) the debtor surrenders the property securing such claim to such holder[.]

11 U.S.C. § 1325(a)(5) (emphasis added). The underlined language is key in this case.

But, before addressing the language of § 1325(a)(5)(B)(ii), the "hanging paragraph" at the end

of § 1325(a) (added via the BAPCPA amendments) must be considered. It states:

For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the

3

debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a). The unnumbered paragraph created 910 claims for motor vehicles, which are not subject to the claim valuation process in § 506.

Returning to § 1325(a)(5)(B)(ii), the issue presented is how, for a 910 claim, a debtor's chapter 13 plan can meet the requirement that the value of property to be distributed under the plan be "not less than the allowed amount of such claim" measured "as of the effective date of the plan."

**B.      Creditor's argument.**

In *Till*, when evaluating how to treat a claim in accordance with § 1325(a)(5)(B)(ii), a Supreme Court plurality decided courts should apply an interest rate calculated by taking the national prime rate and adding a risk adjustment factor (generally 1 to 3%). *Till*, 541 U.S. at 479-80. Creditor argues the Court should not follow *Till* and instead should require Debtor to pay Creditor's 910 claim at the Contract's interest rate of 14.9%. Creditor contends *Till*, issued before BAPCPA's enactment, only addresses claims that can be crammed down to the value of a creditor's collateral, whereas 910 claims cannot be treated in this fashion owing to the hanging paragraph added to § 1325(a) in 2005.

Creditor acknowledges existing court opinions are not in line with its view but argues they "fail to address the circumstance of fully secured creditors in the interplay of sections 1325(a) and 506 according to <u>case law discussing the 2005 amendments</u> affecting the 2004 *Till* decision, and should be distinguished." [Objection at 3 (emphasis in original).] Creditor references those cases in critical terms:

> It is clear from a review of other reported cases involving post-2005 910 claims that they have overlooked and not gotten into the real issue yet. Often trustees or creditors in those reported cases failed to object to confirmation of the Chapter 13 plan which, the courts noted, waived the later argument challenging use of the *Till* interest rate. Secondly, many courts are still robotically applying *Till* to 910 claims without consideration of the 2005 statutory amendments to 910 claims (enacted the year after *Till* was issued in 2004) and without discussion of [*Nuvell Financial Services Corp. v. Dean (In re Dean)*, 537 F.3d 1315, 1318 (11th Cir. 2008)] and *Shaw*, and often without a party having raised or made the argument. Thus, those other reported cases are of no benefit to addressing the issue directly presented now.

4

[*Id.* at 10-11; *see also* ECF No. 43 (the "Reply") at 2 (stating "BAPCPA changed the law on 910 claims, and several courts since then have fumbled with the language of the amendments as to 910 claims.").] Based on its reading of the Code and case law, and its view of Congressional intent, Creditor declares a 910 claim simply cannot be crammed down. [*See* Objection at 10; Reply at 3.]

To support this view, Creditor's Objection and Reply walk through several decisions at length. Creditor's depiction of these cases is intended to support its conclusion that courts that have written published opinions on this issue have misapplied the Code and fail to comprehend how 910 claims must be treated in a chapter 13 plan post-BAPCPA.

> **C.      The BAPCPA Amendments allow a debtor to cram down the interest rate via § 1325(a)(5)(B)(ii) and do not require a debtor's chapter 13 plan to pay contract-rate interest on a 910 claim.**

Section 1325(a)(5) contains three mandatory treatment options for secured claims:

> A debtor's proposed plan must accommodate each allowed, secured creditor in one of three ways under § 1325(a)(5): (1) by obtaining the creditor's acceptance of the plan; (2) by surrendering the property securing the claim; or (3) by permitting the creditor to both retain the lien securing the claim and a promise of future property distributions (such as deferred cash payments) whose total "value, as of the effective date of the plan, . . . is not less than the allowed amount of such claim." § 1325(a)(5); *Till v. SCS Credit Corp.*, 541 U.S. 465, 468 [ ] (2004).

*Shaw*, 552 F.3d at 450. As Debtor has not surrendered the Vehicle and Creditor has not accepted the Plan, the issue here is whether the Plan proposes to pay Creditor value, as of the effective date of the Plan, that is not less than the allowed amount of Creditor's claim pursuant to § 1325(a)(5)(B)(ii). To pay appropriate "value" to Creditor via a stream of future payments, Debtor must pay its claim with interest. *Rake v. Wade*, 508 U.S. 464, 472 n. 8 (1993). Indeed, Creditor does not dispute that a plan must pay a secured claim that is *not* a 910 claim with interest and can propose the formula rate in *Till*. Rather, Creditor argues 910 claims must be treated differently. This is incorrect.

The hanging paragraph added in 2005 eliminated bifurcation under § 506 for 910 claims. *In re Long*, 519 F.3d 288, 294 (6th Cir. 2008). Stated differently, it prevents a debtor from splitting a 910

claim into a secured portion and an unsecured portion based on a vehicle's value. *DaimlerChrysler Servs. North Am. LLC v. Taranto (In re Taranto)*, 365 B.R. 85, 89 (B.A.P. 6th Cir. 2007). But the BAPCPA amendments did not alter, let alone eliminate, the language used in § 1325(a)(5)(B)(ii). *Taranto*, 365 B.R. at 90 ("11 U.S.C. § 1325(a)(5)(B)(ii) remains unchanged by BAPCPA. This Panel believes the *Till* rationale remains valid and binding."); *In re Soards*, 344 B.R. 829, 831 (Bankr. W.D. Ky. 2006) ("The language of 11 U.S.C. § 1325(a)(5)(B)(ii) was unchanged by BAPCPA[.]").]

Section 1325(a)(5)(B)(ii) requires a chapter 13 plan to pay the "present value" of an allowed secured claim. To pay "present value," interest is required and, in *Till*, the Court adopted a formula approach (prime rate plus a risk adjustment) to determine the appropriate rate. *Id*. at 479-80. A prior opinion of this Court states the plurality opinion in *Till* constitutes binding precedent. *In re Jones*, 534 B.R. 149 (Bankr. E.D. Ky. 2015).[4]

While a chapter 13 plan may not alter (or "cram down") the secured value of a 910 claim, it may—indeed, in most circumstances, it *must*—pay the 910 claim over time at the *Till* interest rate.[5] This is true even if the *Till* rate is higher than the contract interest rate—which is precisely what happened in *Taranto*.[6] In *Taranto*, the debtors and a creditor executed a sales contract for a vehicle within 910 days of the chapter 13 bankruptcy filing. The debtors proposed a 36-month plan that treated the creditor's secured claim by paying it in monthly installments over the plan's term at the contract interest rate of 0%. This proposed treatment accelerated the payment schedule on the claim, meaning it

---

[4] While *Jones* did not involve a 910 claim, it explains: "this Court has followed the *Till* plurality opinion for the past eleven years, whether in its Local Form Plan [ ], in its daily Chapter 13 practice, or in its written opinions. *See*, *e.g.*, *In re Kelley*, No. 11-51197, 2012 WL 5457331, at *3 (Bankr. E.D. Ky. Nov. 8, 2012) (stating that a formula rate sixteen points lower than the contract rate was 'permissible' under *Till*, citing *Taranto*). The formula rate is the appropriate method to determine the cramdown rate in a chapter 13 proceeding. The Court joins those courts that have followed [*Bank of Montreal v. Official Comm. of Unsecured Creditors (In re Am. HomePatient, Inc.)*, 420 F.3d 559, 565 (6th Cir. 2005)] in concluding that the *Till* plurality opinion is binding." *Jones*, 534 B.R. at 154.

[5] An exception to the rule applies when a debtor chooses to perform under a prepetition contract and not amend any of its payment terms. *See*, *e.g.*, *McDonald v. Chambers (In re Chambers)*, 838 Fed. Appx. 979 (6th Cir. Jan. 12, 2021).

[6] *See also Soards*, 344 B.R. at 832 ("The Court finds that the *Till* analysis is still sound and applies to cases like those at bar where the contact rate of interest is below prime.").

6

would be paid before the contract's maturity date. The creditor objected, arguing the debtors' plan should apply the "prime-plus" interest rate under *Till* to its secured claim because the plan proposed to alter the parties' contract. The bankruptcy court agreed with the debtors that their proposed treatment would put the creditor in a better position than it would have been under their contract and, thus, it should receive the contract interest rate. The Bankruptcy Appellate Panel reversed this ruling.

The Panel held the debtors' plan to accelerate their payments to the creditor, even while proposing to pay the contract interest rate, constituted a cramdown. *Taranto*, 365 B.R. at 90 ("*Any* plan that seeks to modify a secured creditor's rights over its objection is a cram down that implicates § 1325(a)(5)(B)(ii). 'Cram down' is a term that refers to confirmation of a chapter 13 plan over the objection of the holder of a claim."). When a claim is subject to cramdown, § 1325(a)(5)(B)(ii) requires the claim be paid with interest at the *Till* rate, and the contract rate "need not be considered." *Taranto*, 365 B.R. at 90, n.8. The Panel added: "[t]his would be equally true in an instance where a contract required, say, a twenty-five percent interest rate." *Id*.

Here, Debtor's Plan proposes to pay Creditor's 910 claim in periodic payments in a way that modifies Creditor's contractual rights and over Creditor's objection. Accordingly, Debtor seeks to cram down Creditor's claim. Section 1325(a)(5)(B)(ii) allows this, and the hanging paragraph does not preclude it. This conclusion is in line with decisions from opinions issued within the Sixth Circuit and across the country concerning 910 claims.[7] In fact, neither Creditor's Objection nor its Reply cites to

---

[7] *See*, *e.g.*, *In re Page*, 658 B.R. 178 (Bankr. E.D. Wash. 2024); *In re Adkins*, Case No. 14-12611, 2015 Bankr. LEXIS 1675 (Bankr. W.D. La. May 14, 2015*); In re Kemmery*, 516 B.R. 485 (Bankr. N.D. Ohio 2014*); In re Powell*, Case No. 12-12716, 2013 Bankr. LEXIS 1848 (Bankr. D. Kan. May 1, 2013); *In re Kelley*, Case No. 11-51197, 2012 Bankr. LEXIS 5252 (Bankr. E.D. Ky. Nov. 8, 2012); *In re Riley*, 428 B.R. 757 (Bankr. N.D. Ohio 2010); *In re Velez*, 431 B.R. 567 (Bankr. S.D.N.Y. 2010); *Marketview Motors, Inc. v. Johnson (In re Johnson)*, Adv. No. 09-8010, 2009 Bankr. LEXIS 811 (Bankr. C.D. Ill. Apr. 15, 2009); *Drive Financial Services., L.P. v. Jordan*, 521 F.3d 343 (5th Cir. 2008); *Wachovia Dealer Servs. v. Jones (In re Jones)*, 530 F.3d 1284 (10th Cir. 2008); *Ford Motor Credit Co., LLC v. Robertson*, 396 B.R. 672 (S.D.W.V. 2008); *In re Harrison*, 394 B.R. 879 (Bankr. N.D. Ill. 2008); *In re Vandernick*, No. 07-1068, 2008 Bankr. LEXIS 863 (Bankr. N.D.W.V. March 31, 2008); *In re Phillips*, 362 B.R. 284 (Bankr. E.D. Va. 2007); *DaimlerChrysler Fin. Servs. N. Am. LLC v. Griffin (In re Wilson)* 374 B.R. 251 (B.A.P. 10th Cir. 2007); *In re Hopkins*, 371 B.R. 324 (Bankr. N.D. Ill. 2007); *In re Morris*, 370 B.R, 796 (E.D. Wis. 2007); *CitiFinancial Auto v. Smith*, Case No. 07-2190-JAR, 2007 U.S. Dist. LEXIS 53206 (D. Kan. July 18, 2007); *In re Phillips*, 362 B.R. 284, 306 (Bankr. E.D. Va. Mar. 8, 2007); *In re Ross*, 355 B.R. 53 (Bankr. W.D. Tenn. 2006); *In re Murray*, 352 B.R. 340, 354 (Bankr. M.D. Ga. 2006); *In re Vagi*, 351

even one case—from any court in the country—holding (a) the interest rate on a 910 claim cannot be crammed down in a chapter 13 plan owing to the hanging paragraph added by the BAPCPA amendments, or (b) a creditor with a 910 claim treated in a chapter 13 plan must be paid interest at the contract rate, not a *Till* rate, to satisfy § 1325(a)(5)(B)(ii).

Finally, Creditor contends a more recent Sixth Circuit decision stands for the proposition that a "contract interest rate is appropriate for claims not subject to a cramdown." [Objection at 9, *citing McDonald v. Chambers (In re Chambers)*, 838 Fed. Appx. 979 (6th Cir. Jan. 12, 2021).] While this statement is correct, Creditor misinterprets its implications. The debtor in *Chambers* confirmed a chapter 13 plan that stated she would repay a car loan directly to the lender at the contract rate of 15%. The creditor did not object to the treatment of its claim, thereby implicating § 1325(a)(5)(B)(i). But the chapter 13 trustee objected to confirmation and appealed the confirmation order to the district court and then to the Sixth Circuit, contending the debtor's payments to the creditor at "the original interest rate violates the 'prime-plus' formula for interest calculations adopted in *Till*[.]" *Chambers* at 981. The Sixth Circuit disagreed, explaining *Till* "is inapplicable when a debtor's Chapter 13 plan proposes to pay a creditor in accordance with the terms of the original contract." *Id.*

Creditor contends *Chambers* implies that a debtor must pay a 910 claim in accordance with the parties' prepetition contract, including the interest rate, as a 910 claim cannot be crammed down. This is incorrect. The debtor in *Chambers* proposed a plan that did not alter the secured creditor's claim, even though § 1322(b)(2) would have allowed this. In this case, Debtor has not proposed similar treatment of Creditor's claim. A chapter 13 debtor may opt to perform in accordance with a prepetition contract without seeking to cram down a secured claim under § 1325(a)(5)(B)(ii), but this does not preclude a different chapter 13 debtor from using cramdown.

---

B.R. 881 (Bankr. N.D. Ohio 2006); *In re Brill*, 350 B.R. 853 (Bankr. E.D. Wis. 2006); *In re Taylor*, Case No. 06-30952, 2006 Bankr. LEXIS 4679 (Bankr. N.D. Tex. July 19, 2006); *In re Bufford*, 343 B.R. 827 (Bankr. N.D. Tex. 2006); *In re Brooks*, 344 B.R. 417 (Bankr. E.D.N.C. 2006); *In re Fleming*, 339 B.R. 716 (Bankr. E.D. Mo. 2006); *In re Pryor*, 341 B.R. 648 (Bankr. C.D. Ill. 2006); *In re Shaw*, 341 B.R. 543 (Bankr. M.D.N.C. 2006).

When a chapter 13 debtor chooses to cram down a secured claim, they can do this by modifying the interest rate. *Chambers*, 838 F. Appx. at 981. And "[i]n the case of a cram down, the applicable interest rate is governed by the 'prime-plus' formula adopted in *Till*." *Id*. at 982 (citing *Taranto*, 365 B.R. at 90-91); *see also Tucker v. Santander Consumer USA Inc. (In re Tucker)*, No. 25-8010, 2026 U.S. App. LEXIS 9141, at *9 (B.A.P. 6th Cir. March 30, 2026) ("Cram down can be accomplished in several ways. . . . Relevant to the present appeal, a debtor can cram down a secured creditor by modifying the interest rate." (citations and footnote omitted)). Because a debtor may propose a plan that alters the contractual interest rate on a 910 claim, Creditor's objection lacks merit.

## II.    An Interest Rate Based on *Till* is Appropriate Here.

Creditor's fallback argument (if "the 2005 BAPCPA amendments are ignored") is that "[e]ven *Till*'s non-majority plurality opinion countenanced circumstances where its prime-plus guidance should not be utilized." [Objection at 12.] Creditor avers the contract rate, not a *Till* rate, is appropriate for the sub-prime auto loan at issue. It contends "the proposed *Till* adjustment is inadequate in matching actual lending risks in the sub-prime market. In no way is the interest rate proposed by Debtor in his Plan close to rates for a sub-prime loan in these circumstances and the risks to Creditor involved with this debt, including the risks pending in this Chapter 13 repayment plan." [*Id*.] Creditor then speculates about Debtor's likelihood of success in chapter 13 and notes the Plan will extend Debtor's payments on the Vehicle several years beyond the Contract's term, thereby increasing Creditor's risk, particularly given the Vehicle's expected depreciation over the Plan's five-year term. [*Id*. at 12-13; *see also* Reply at 9-11 (citing, *inter alia*, *In re Hoskins*, 590 B.R. 842 (Bankr. S.D. Ind. 2018), for proposition that a court may approve a rate higher than 1-3% over the prime rate).]

In *Till*, the Supreme Court's plurality gave creditors the burden to present evidence that a higher interest rate is warranted under the circumstances:

> Because bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach then requires a bankruptcy court to adjust the

9

prime rate accordingly. The appropriate size of that risk adjustment depends, of course, on such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan. The court must therefore hold a hearing at which the debtor and any creditors may present evidence about the appropriate risk adjustment. Some of this evidence will be included in the debtor's bankruptcy filings, however, so the debtor and creditors may not incur significant additional expense. Moreover, starting from a concededly low estimate and adjusting upward places the evidentiary burden squarely on the creditors, who are likely to have readier access to any information absent from the debtor's filing[.]

*Till*, 541 U.S. at 479. Thus, under *Till*, a court may find a higher interest rate to be appropriate when evidence supports it. But Creditor neither provided any such evidence with its legal arguments nor requested an evidentiary hearing on its Objection.

The parties stipulated to facts so that the Court could address this issue on the papers. The stipulations do not concern factors bearing on an appropriate risk adjustment, or that suggest it would be appropriate here to require an interest rate above the typical *Till* rate proposed in Debtor's Plan. Beyond the stipulations, Creditor did not submit expert or any other evidence concerning an appropriate interest rate for this claim. Its anecdotal contentions regarding the risk here, and Debtor's ability to perform under his Plan, are either unsworn, underdeveloped, or concern typical aspects of chapter 13 plans (e.g., extending the term of a loan beyond its original length).

Creditor has not satisfied its burden to establish the interest rate proposed in the Plan is inadequate. Accordingly, Creditor's alternative argument fails as well.

## CONCLUSION

As the Eleventh Circuit stated, "the hanging paragraph has caused significant 'confusion and incoherence in the law' and [it] has been rightly criticized for its poor drafting[.]" *Graupner v. Nuvell Credit Corp. (In re Graupner)*, 537 F.3d 1295, 1297 (11th Cir. 2008) (citations omitted). With that said, an overwhelming consensus exists that the Code allows a debtor to propose and confirm a chapter 13 plan that modifies the interest rate paid on a 910 claim from the contract rate. Creditor criticizes this unanimity and derides several of the opinions that establish that accord, but Creditor offered *not one*

*single case* espousing its interpretation of the Code. This is because Creditor's argument goes against

the Code's plain language and lacks merit.

Creditor's Objection [ECF No. 17] is OVERRULED.

11

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Douglas L Lutz*
**Bankruptcy Judge**
**Dated: Monday, April 20, 2026**
**(dll)**